UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL CROFT, ET AL.,

        Plaintiff,                         No.17-13421

v.                                      District Judge Stephen J. Murphy, III
                                        Magistrate Judge R. Steven Whalen

L.C. MAXWELL AND ASSOCIATES,
INC., ET AL.,

        Defendants.
_____/

**OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

On October 20, 2017, Plaintiffs Russell Croft and Renee Croft, husband and wife, file their complaint alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., the Michigan Occupational Code ("MOC"), M.C.L. § 339.915, *et seq*, and (alternatively) the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.252 *et seq*.  After the Defendants failed to respond, the Clerk entered default against all Defendants on December 13, 2017 [Doc. #s 8-10]. Plaintiffs filed a motion for default judgment [Doc. #13].  On March 21, 2018, the Court granted Plaintiffs' motion for default judgment against all Defendants, reserving the amount of damages pending a hearing [Doc. #14].

An evidentiary hearing on damages was held on June 6, 2018, and Plaintiffs filed a supplemental brief and amended supplemental brief on damages on July 16 and July 17, 2018, respectively [Doc. #21 and #22].

The matter has been referred for hearing and determination of damages pursuant to 28 U.S.C. § 636(b)(3). For the reasons discussed below, I determine that damages should be awarded in the total amount of $101,000.00, exclusive of attorney fees.

## II. FACTS

At the evidentiary hearing on damages, Plaintiff Renee Croft ("Renee") testified that she received a telephone call from Samantha Willie of L.C. Maxwell and Associates, informing her that they were attempting to collect a 2011 debt from Liberty Group. *Transcript of Evidentiary Hearing, Exhibit 2 to Amended Supplemental Brief in Support of Plaintiffs' Damage Request* [Doc. #22], at 5-6. Ms. Willie told Renee that L.C. Maxwell was located in Atlanta, Georgia, but would not provide Renee with an address. *Id*. at 7. Ms. Willie told Renee that she could not pay with a certified check, but only with a credit card over the telephone or with a prepaid card from WalMart. *Id*. at 8. Renee testified that Ms. Willie was intimidating, and was evasive about verifying the debt. *Id*. at 9. She said that Ms. Willie "made me feel like I was doing something wrong by asking questions about something she was trying to collect on, and that's what made me very uneasy about the debt because she couldn't really give me any information." *Id*. at 9. Renee subsequently called Liberty Group, and was informed that neither she nor her husband, Russell Croft, had a loan with them. *Id*. at 10-11.

Later, a Mr. Wilson, who held himself out as the manager of L.C. Maxwell, called Renee on her cell phone while she was at work. Renee told him that she did not believe she owed the debt and asked for verification. Mr. Wilson told her, "You just need to pay this." *Id*. at 12. Renee told Mr. Wilson that she was at work, and that it was not a convenient time for her to receive telephone calls. She testified that she had a managerial position, and that if people overheard such conversation they might question her ability to

act as a manager at work if she could not manage her personal life. *Id*. at 13. When she told Mr. Wilson that she could not talk because she was at work, he continued talking, saying that she "had to take care of this now." *Id*. at 17. L.C. Maxwell called her additional times at work, but she let the calls go to voice mail. *Id.* at 18.

Mr. Wilson, or someone from L.C. Maxwell called Renee at least three times, and also left voice mails. Renee asked for written verification of the debt, but never received it. *Id*. at 13-14. Someone from L.C. Maxwell also left a voice mail at Renee's mother's house. The voice mail said that "this is L.C. Maxwell Associates trying to reach Russell Croft" in regards to a debt he owed. *Id*. at 17-18. Her mother, whom Renee described as a "worrier," was very concerned about the voice mail. *Id*. at 13-14. This voice mail was left after people from L.C. Maxwell, including Mr. Wilson and Ms. Willie, had already contacted Renee and Russell Croft. Renee testified that it was therefore inconceivable that the L.C. Maxwell people called her mother in an attempt to locate her. *Id*. at 14-15.

Russell Croft ("Russell") received two telephone calls from Samantha Willie, and Ms. Willie also left about 15 voice mails on Russell's phone. *Id*. at 19-20. Russell took two telephone calls from Ms. Willie while he was at work; he informed her of this, and told her that it was not convenient for him to receive calls at work. *Id*. at 20-21. He asked her to stop calling him, and requested verification of the debt. However, Ms. Willie told Russell that she would call again the next day, and that she would contact his employer about garnishing his wages. *Id*. at 21. L.C. Maxwell subsequently left voice mails suggesting that they would call his employer. *Id*. at 25. Russell testified that he was very upset about the possibility of a wage garnishment and how that would affect his ability to provide for his children, who were enrolled in Catholic school. He informed his HR Department about the situation, and asked them to contact him if they received any

communications from a debt collector. *Id*. at 22-23.

### III. DISCUSSION

Plaintiffs seek damages of not less than $101,000, broken down as follows:

Statutory Damages under the FDCPA:   $1,000.00

Actual Damages under the FDCPA:   $25,000.00

Treble Damages under the MOC:   $75,000.00

The Court has already granted a default judgment as to liability. The testimony of Renee and Russell Croft underscores that Defendants violated several provisions of both the FDCPA and Michigan's MOC. First, 15 U.S.C. § 1692(b) prohibits a debt collector who communicates with a person other than the consumer from stating that the consumer owes any debt, and from contacting any such third party more than once. Here, L.C. Maxwell, through its employees and agents, called Renee numerous times about a debt allegedly owed by her husband, and also left a voice mail for Renee's mother (Russell's mother-in-law), unlawfully revealing that they were attempting to collect a debt owed by Russell. The call to Renee's mother could not have been a mere attempt to locate Russell (or Renee), as L.C. Maxwell had already been in contact with the Crofts.[1]

Second, 15 U.S.C. § 1692(d) prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This includes "engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the number called." Likewise, the MOC, M.C.L. § 339.915(m) prohibits a debt collector from using "harassing, oppressive, or abusive" methods, including "causing

---

[1] § 1692(b) includes a "safe harbor" provision whereby a debt collector may have contact with third parties for the limited purpose of locating the consumer. *See Litt v. Portfolio Recovery Associates LLC*, 146 F.Supp.3d 857, 866 (E.D. Mich. 2015).

a telephone to ring or engagina a person in a telephone conversation repeatedy, continuously, or at unusual times or places which are known to be inconvenient to the debtor." Here, L.C. Maxwell repeated called both Renee and Russell Croft, including calls when they were at work, despite requests not to do so.[2]  Both Ms. Willie and Mr. Wilson were intimidating and threatening toward Renee, and when Renee asked Mr. Wilson for verification of the debt, he merely told her she "just needed to take care of this." Ms. Willie threatened Russell with wage garnishment, and told him she would contact his employer. This was very emotionally upsetting to Russell, who was concerned about the financial impact on his family if there were a garnishment.  He felt compelled to contact his employer's HR department.  L.C. Maxwell also caused emotional distress for Renee's mother–a worrier by nature– by improperly calling her and leaving a message about an alleged debt that Russell owed.

L.C. Maxwell also violated 15 U.S.C. § 1692(e)(4) by threatening garnishment, and violated § 1692(e)(2)(A) by misrepresenting the character and amount of the debt allegedly owed to "Liberty Group."  Renee called Liberty Group, and ascertained that there was no loan or debt.  These actions also violated the MOC, M.C.L. §§ 339.915(e) and (f).

L.C. Maxwell violated 15 U.S.C. § 1692(g), which requires a debt collector to send written verification of the debt.  Both Russell and Renee Croft requested verification, but none was forthcoming.  This was also a violation of the M.O.C., M.C.L. § 339.918.

Given these violations, Plaintiffs are clearly entitled to statutory damages of $1,000.00 under the FDCPA.

---

[2] The Defendants' unanswered telephone calls and voice mails are "communications," and therefore actionable under the FDCPA.  *Litt* at 869-872.

A plaintiff can also claim actual damages under both the FDCPA and the MOC. *See Roberts v. Shermeta, Adams & Von Allmen, P.C.*, 2015 WL 1401352, at *7 (W.D. Mich. 2015) ("[A]ctual damages ... are intended to compensate [plaintiff] for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from failure to comply with the FDCPA.")(internal quotations and citations omitted).

Both Russell and Renee Croft presented credible and compelling testimony regarding the emotional distress they suffered as the result of Defendants' violation of the FDCPA and the MOC. The repeated phone calls and threats to Russell to contact his employer and garnish his wages caused him clear concern for the financial welfare of his family. He took the undoubtedly embarrassing and stressful step of notifying his employer that a debt collector might be contacting them. Likewise, the aggressive and threatening calls to Renee at her place of employment were not only upsetting in and of themselves, but caused her concern that if other employees overheard the calls, they might question her competence as a manager. Plaintiffs have proven emotional distress damages. They have also provided the Court with examples of similar cases in this district where plaintiffs were awarded actual damages in the range of $25,000.00. *See Bysouth v. Security Credit Solutions, LLC*, No. 16-10519 (E.D. Mich.)(Friedman, J.); *Bryand v. Meade & Associates, Inc*, No. 15-10199 (E.D. Mich.)(Cohn, J.); *see also Zontini v. Merchant Recovery Services, Inc.*, 2013 WL 5640125 (E.D. Mich. 2013)(Duggan, J.); *Green v. Nationwide Arbitration Services, LLC*, 2015 WL 7717165 (E.D. Mich. 2015)(Hood, J.). The Plaintiffs' proofs in this case support an award of $25,000.00 in actual damages.

Finally, under the MOC, "[i]f the court finds that the method, act, or practice was a wilful violation, it may award a civil penalty of not less than 3 times the actual damages, or $150.00, whichever is greater and shall award reasonable attorney's fees and court costs incurred in connection with the action." M.C.L. § 339.916. Based on the evidence of Defendants' blatant and persistent violations of the MOC, and comparing this case to the others from this district cited above, Plaintiffs have shown willful violations, and in addition to the award of $25,000.00 in actual damages, are entitled to an award of treble damages in the amount of $75,000.00.[3]

Accordingly, I find that Plaintiffs are entitled to an award of damages as follows:

| | |
|---|---|
| Statutory damages under FDCPA: | $1,000.00 |
| Actual damages under FDCPA and MOC: | $25,000.00 |
| Treble damages under MOC: | $75,000.00 |
| TOTAL: | $101,000.00 |

IT IS SO ORDERED.

Dated: January 5, 2018
s/R. Steven Whalen
R. STEVEN WHALEN
U.S. MAGISTRATE JUDGE

---

[3] The question of attorney fees will be decided separately.

## CERTIFICATE OF SERVICE

I hereby certify on January 5, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on January 5, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen